WILLIAM L. MAUK (ISB #1825)
**MAUK & BURGOYNE**
515 South 6th Street
Post Office Box 1743
Boise, Idaho 83701-1743
Telephone: (208) 345-2654
Facsimile: (208) 345-3319

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAWN O'DELL, | ) |
| | ) Case No. _____ |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| MELBA SCHOOL DISTRICT, | ) **COMPLAINT AND DEMAND** |
| | ) **FOR JURY TRIAL** |
| Defendant. | ) |
| | ) |

COMES NOW the Plaintiff and for claims and causes of action against the Defendant, states, alleges and avers as follows:

### NATURE OF CLAIM

1. This is an action for equitable and legal relief and monetary damages brought to redress the rights of the Plaintiff to reasonable accommodation and freedom from discrimination on the basis of disability, and to freedom from retaliation and reprisal for making, pursuing, participating in and supporting claims for unlawful discrimination and for opposing employment practices made unlawful by state and federal law, and to redress violation of Plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA").

2. In particular, this action arises under:

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

(a) the Idaho Human Rights Act (IHRA), Chapter 59, Title 67, Idaho Code, including in particular Idaho Code, Section 67-5909 which prohibits discrimination against a person because of, or on the basis of, disability, and Idaho Code, Section 67-5911 which prohibits reprisal or retaliatory acts;

(b) Title I of the Americans with Disabilities Act (ADA), as amended, 42 U.S.C. §§ 12111, et seq., including 42 U.S.C. § 12111(9) which requires reasonable accommodation of qualified individuals with disabilities, 42 U.S.C. § 12112(b)(5) which prohibits employment discrimination against an individual with a disability and 42 U.S.C. § 12203(a) which prohibits reprisal or retaliatory acts; and

(c) the Family Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, et seq.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 2617, as well as 28 U.S.C. § 1331 pertaining to civil actions arising under the laws of the United States and 28 U.S.C. § 1343 pertaining to the deprivation of civil rights.

4. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1391.

5. The unlawful employment practices alleged herein were committed in this judicial district, the Plaintiff was employed and worked for the Defendant in this judicial district and the Defendant maintains its principal offices and employment records pertinent to this action in this judicial district.

## PARTIES

6. Plaintiff, Shawn O'Dell (O'Dell), is now, and at all times pertinent hereto was, an adult citizen of the United States and resident of the State of Idaho, currently residing in Canyon County, Idaho.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

...

7. At the time this action accrued Plaintiff was an employee of the Defendant within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 2611(2)(A).

8. At the time this action accrued Plaintiff was a qualified individual with a disability within the meaning of 42 U.S.C. § 12112(a), entitled to coverage under the ADA and the IHRA and protected from discrimination in employment based on his disability, and Defendant knew of Plaintiff's disability.

9. Defendant, the Melba School District (MSD), is now, and at all times pertinent hereto was, a public school district organized pursuant to the laws of the State of Idaho providing an education program for kindergarten through twelfth grades, including for students with disabilities and special educational needs.

10. At the time this action accrued Defendant was an employer within the meaning of 42 U.S.C. § 12111(5)(A), 29 U.S.C. § 2611(4)(A) and Idaho Code, Section 67-5902(6).

## EXHAUSTION OF REMEDIES AND AUTHORIZATION FOR SUIT

11. With respect to the claims and causes of action for disability discrimination and failure to provide reasonable accommodation alleged herein, arising before November 2010, Plaintiff has exhausted all administrative remedies and complied with all conditions precedent required by applicable state and federal laws prior to commencement of this action.

12. On or about March 3, 2009 Mr. O'Dell filed formal charges of disability and failure to accommodate discrimination against the Defendant with the Idaho Human Rights Commission (IHRC) and simultaneously with the United States Equal Employment Opportunity Commission (EEOC), and filed amended charges on June 3, 2009.

13. Following an investigation, on December 3, 2010 the IHRC issued the report of its investigator and the Commission Determination based thereon, finding probable cause to believe discrimination occurred; subsequently, the EEOC joined in that determination.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

14. On March 28, 2011, following unsuccessful efforts to conciliate and settle these charges facilitated by the IHRC, the IHRC and the EEOC notified O'Dell of his right to bring a private civil action against the Defendant under federal and Idaho law within 90 days of the notice.

15. All efforts at conciliation and mediation of the Plaintiff's initial discrimination and reasonable accommodation charges before the IHRC and EEOC have proven unsuccessful.

16. On April 22, 2011, Plaintiff filed additional charges of disability discrimination and retaliation with the IHRC and EEOC arising from the Defendant's handling and rejection of his application for employment as the MSD high school Special Education Teacher between October and December 2010.

17. These additional charges remain pending before these administrative agencies and Plaintiff reserves his right to amend this Complaint alleging additional claims and causes of action for discrimination and retaliation when the administrative proceedings before the IHRC and EEOC are concluded.

## FACTS COMMON TO ALL CAUSES OF ACTION

18. At the age of 16 or 17, O'Dell was diagnosed as suffering from a major, recurrent depressive disorder which, since then, has been largely controlled with medication and counseling.

19. In recent years, particularly in 2008 and since, he has been evaluated and diagnosed as having other probable disabilities including a bipolar type II disorder, ADHD and learning difficulties.

20. Historically, these conditions did not interfere with Plaintiff's ability to perform the duties of his employments, including with the MSD, except as described herein.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 4**

21.     O'Dell began his employment with the MSD on or about August 19, 2006 as a para-professional working in the high school special education program together with the full time special education teacher, Jared Bissen.

22.     When O'Dell interviewed for para-professional employment, he informed the interview team – consisting of Mr. Bissen, Ms. Williams and Heidi Friend – that he had a disability and therefore could relate to the difficulties confronting students with disabilities in the MSD.

23.     In the special education program O'Dell was assigned a variety of responsibilities assisting students with learning and physical disabilities and, as he demonstrated competence and success, his special education classroom duties increased.

24.     While working for the MSD during the 2006-2007 school year, O'Dell was also enrolled as a graduate student at Northwest Nazarene University (NNU) in an education curriculum and, based in part upon a letter of recommendation from the MSD superintendent, was part of the initial class of an Accelerated Certification Program.

25.     The superintendent, the special education teacher, the middle school principal and others in the administration of the MSD schools were well aware of O'Dell's course work at NNU and his success in that coursework.

26.     At the close of the 2006-2007 school year, O'Dell received very high marks on his job performance evaluations and was extended an employment contract for the 2007-2008 school year.

27.     O'Dell is informed and believes that near the beginning of the school year in August 2007 the high school special education teacher, Mr. Bissen, had legal problems resulting in him taking or being placed on administrative leave.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 5**

28. During Mr. Bissen's leave, extending into October 2007, O'Dell was essentially placed in charge of the special education program at the MSD high school. In or about October 2007, O'Dell obtained additional duties teaching art history at the middle school, supervised by the principal, Kelsey Williams.

29. After the regular special education teacher returned, O'Dell continued to assist Mr. Bissen with high school special education, was assigned to be the gifted and talented educator, and continued to teach art history in the middle school.

30. In March 2008, O'Dell applied for and received his Idaho Education Credential, and alternative route certificate to teach history/social studies valid from September 1, 2008 through September 1, 2011, and he so advised the MSD superintendent, Robert Larson, and high school principal, Andrew Grover.

31. In the Spring of 2008 Mr. Larson, Mr. Grover, Ms. Williams and Larry Lincoln, who was then U.S. History and Girls' Conditioning teacher at MSD high school, all provided very favorable letters of recommendation for O'Dell in his pursuit of a full time, regular teaching position.

32. O'Dell is informed and believes that, in May of 2008, the MSD terminated the high school special education teacher's employment or informed him that his contract would not be extended for the 2008-2009 school year.

33. O'Dell promptly notified Superintendent Larson of his interest in the special education position he had filled in Mr. Bissen's absence.

34. O'Dell also completed and delivered an application packet to the MSD District Office including a copy of his teaching certificate; his NNU transcripts with a 3.75 GPA; a copy of a letter of acceptance into the master of arts, special education certification program at Boise State University (BSU); and his teaching evaluations with the MSD.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

35. O'Dell received a letter and note from Jackie Engle, the MSD District Office Administrative Assistant, informing him that the District, in processing his application for the special education teaching position, would use and rely on the documents in his personnel file, including those referenced in Paragraph 34 hereof and his original employment application which included a copy of his college degree.

36. Despite several messages Plaintiff left for Superintendent Larson regarding his application for the special education position, O'Dell was never contacted or allowed an interview for the position.

37. Nonetheless, O'Dell was offered an extension of his prior para-professional contract for the coming 2008-2009 school year.

38. In the summer of 2008, O'Dell's rejection for the special education teaching position exacerbated the manifestations of his depression. His medication became ineffective and he harbored thoughts of suicide.

39. On August 19, 2008, the first day of the new school year, O'Dell was struggling to control the symptoms of his disability and informed the high school principal he needed to leave, which the superintendent then authorized.

40. The next day, the MSD received a statement from the Emergency Department at St. Luke's Regional Medical Center requesting that O'Dell be excused from work.

41. On August 21, 2008 the MSD then received a letter from Dr. Mac Webb, a Licensed Psychologist, stating that Plaintiff needed a three-week leave of absence to undergo a psychological assessment and adjust to new medication for his depression.

42. As discussed in more detail below, on September 8, 2008 the MSD board of trustees terminated Plaintiff's employment, one day before the end of the medical leave recommended by Dr. Webb.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 7**

**INCORPORATION**

43.     Plaintiff hereby alleges and incorporated all of the foregoing allegations and averments in Paragraphs 1-42 in each and every cause of action stated herein.

**FIRST CAUSE OF ACTION**

**(Violation of Family Medical Leave Act)**

44.     Prior to the termination of O'Dell's employment he had worked for the MSD for at least twelve months.

45.     During that prior twelve months, O'Dell had provided the MSD at least 1,250 hours of service within the meaning of 29 U.S.C. §§ 2611(2)(A) and (C).

46.     On August 19, 2008 O'Dell was required to take a medical leave from his employment with the MSD on the advice of his attending licensed psychologist, Dr. Mac Webb, because of a serious health condition within the meaning of 29 U.S.C. § 2612(1). On or about this date, O'Dell provided the MSD Dr. Webb's letter regarding his need for medical leave.

47.     At the time of commencing his medical leave the Defendant knew and acknowledged that O'Dell was unable to work because of a serious health condition and informed him that he qualified for FMLA leave. At a minimum, MSD was aware of facts sufficient to put it on notice of its duties to O'Dell under the FMLA.

48.     Only later, when the Defendant learned that O'Dell's doctor was recommending a leave until approximately September 9, 2008, did the MSD decide he did not qualify for FMLA leave and informed him that at its next regular meeting the MSD school board "would determine whether to continue his current employment or post the position as vacant."

49.     O'Dell responded to the Defendant noting its miscalculation of his FMLA eligibility, referencing Dr. Webb's aforementioned letter, and requesting that the MSD hold his job open for his anticipated return from medical leave as required by the FMLA.

50. Part of O'Dell's medical leave was covered by paid sick leave credits he had accrued. On September 2, 2008 O'Dell hand delivered a letter to Jackie Engle, administrative assistant with the MSD, explaining his intention to cover his additional medical leave time with hours from the Defendant's sick leave bank.

51. On September 8, 2008, the day before O'Dell was to have concluded his medical leave and return to work, the MSD school board met and elected to terminate his employment.

52. On September 9, 2008 the MSD superintendent sent O'Dell a letter informing him that he had exhausted all of his sick leave and personal leave, his employment with the school district was being immediately terminated and, as previously notified, he was not eligible for FMLA.

53. The MSD made a calculated decision to refuse Plaintiff medical leave in violation of the FMLA, including 29 U.S.C. § 2615(a)(1).

54. Plaintiff was discharged on September 8, 2008 in violation of the FMLA, including 29 U.S.C. § 2615(a)(2).

55. The Defendant's violations of the FMLA were willful within the meaning of 29 U.S.C. § 217(c)(2).

<u>SECOND CAUSE OF ACTION</u>

(Disability Discrimination)

56. Plaintiff hereby incorporates all of the allegations and averments of the First Cause of Action as if set forth below.

57. At the time O'Dell worked for the MSD and applied for the vacant position as special education teacher for the high school, he was an individual with a disability within the meaning and protection of the ADA and IHRA, including that he was a person with record of such a disability.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 9**

58. The MSD knew or had reasons to know of such disability or, nonetheless, regarded O'Dell as having a physical or mental impairment that substantially limited one or more of his major life activities.

59. At the time of his application, Plaintiff had demonstrated satisfactory, indeed exemplary, performance in the duties and responsibilities of his employment with the MSD.

60. Plaintiff was qualified for the vacant special education teacher position.

61. To the extent the Defendant contends O'Dell was not qualified, the rejection of his application was in conflict and contradiction with the policies, practices, procedures and standards the MSD had historically applied in judging the qualifications of other employment applicants, including but not limited to the provisional or other hiring of those not yet possessing specified certification or credentials.

62. The disparate and more stringent job qualification standards the MSD applied to O'Dell were not consistent with the needs and responsibilities of the vacant position and had the purpose and effect of eliminating Plaintiff from consideration because of his disability.

63. The decisions made by the MSD, including not to fairly consider and evaluate O'Dell's application, not to allow him to interview for the vacant position and summarily rejecting his application, were discriminatory and motivated by his disability, and/or motivated by MSD's view that O'Dell had a physical or mental impairment substantially limiting one or more of his major life activities.

64. Such conduct on the part of the MSD was in breach of, and in willful and intentional violation of, the ADA and the IHRA, causing and resulting in damage and loss to the Plaintiff, as described in greater detail herein below.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 10**

## THIRD CAUSE OF ACTION

### (Reasonable Accommodation Discrimination)

65. Plaintiff hereby incorporates all of the allegations and averments of the First and Second Causes of Action, as if set forth below.

66. In August 2008, if not before, the MSD knew that Plaintiff was an individual with a disability or, to the extent it denies such knowledge, the Defendant had reasonable notice and sufficient information from which it should have made inquiry and would have known and appreciated his disability and its limitations to the extent they affected O'Dell's employment.

67. The Plaintiff requested an accommodation in the form of a brief and temporary leave to address acute and temporary problems with his depression and medication in order to enable him to then perform the essential functions of his job at the MSD, which accommodation was reasonable and would not have imposed an undue hardship on the MSD in the operation of its legitimate activities.

68. To the extent the Defendant may deny that Plaintiff sought any accommodation, the MSD should have inferred and appreciated from the circumstances that O'Dell may need an accommodation and should have exercised reasonable efforts to determine what accommodation was appropriate.

69. The law which prohibits disability discrimination imposes on the employer and the employee a duty to engage in an interactive process in good faith to identify the limitations resulting from an employee's disability and potential, reasonable accommodations that could overcome those limitations.

70. The MSD failed to make any effort, let alone a good faith effort, to engage in any interactive process with the Plaintiff as required by law to assist in seeking and implementing reasonable and appropriate accommodations.

71. But for the Defendant's inaction and lack of good faith, the limitations presented and caused by O'Dell's disability in August and September 2008 could have been reasonably accommodated.

72. Such conduct on the part of the MSD was in breach of, and in willful and intentional violation of, the ADA and the IHRA, causing and resulting in damage and loss to the Plaintiff, as described in greater detail herein below.

### FOURTH AND FIFTH CAUSES OF ACTION

**(Disability Discrimination and Retaliation)**

73. The charges filed by the Plaintiff on April 22, 2011 and presently pending before the IHRC and EEOC aver and allege claims of disability discrimination and retaliation committed by the Defendant in violation of the ADA and IHRA.

74. Plaintiff seeks leave to amend this Complaint to more particularly allege and prosecute such claims, and seek damages and remedies therefrom, as allowed under state and federal law, when the proceedings before these administrative agencies are concluded and he is issued notices of his rights to bring such suits.

### DAMAGES

75. The following allegations are incorporated by referenced as part of each count, claim and cause of action stated in this Complaint and any amendment to the Complaint.

76. As the direct and proximate cause of Defendant's discriminatory, retaliatory and other unlawful conduct, Plaintiff has suffered and will continue to suffer substantial damage and loss, tangible and intangible, economic and compensatory, in an amount not less than $300,000.00, for which he seeks full recovery, all and part.

77. Among other things, Plaintiff seeks recoveries and relief, as allowed by law for the following:

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

      a) loss of his job;

      b) back pay, front pay and income loss;

      c) lost employment benefits of every character;

      d) emotional distress, anxiety and mental anguish;

      e) loss of reputation;

      f) disruption of his career; and

      g) loss of privacy.

78. The conduct of the Defendant as described herein was willful, intentional, knowing, malicious, reckless, and in extreme deviation form appropriate and acceptable standards, thereby entitling Plaintiff to awards of exemplary, punitive and liquidated damages as are allowed by law.

79. Plaintiff reserves his right to amend this Complaint to add a prayer for punitive damages, pursuant to Idaho Code, Section 6-1604.

## ATTORNEY FEES AND COSTS

80. As a consequence of the complaints, causes of action and claims stated herein Plaintiff has been required to retain the law firm of Mauk & Burgoyne and has incurred and will incur costs and reasonable attorney fees related thereto, for which he is entitled to a separate award of reimbursement pursuant to the ADA, 42 U.S.C. Section 12205; the Civil Rights Attorney Fees Award Act of 1976, 42 U.S.C. Section 1988; the Idaho Human Rights Act; Idaho Code Sections 12-120 and 12-121; Rule 54 Fed.R.Civ.P.; and other comparable provisions of the laws of the United States and the State of Idaho.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for damages and equitable relief against the Defendant as follows:

**COMPLAINT AND DEMAND FOR JURY TRIAL - 13**

A. For all his actual economic losses and damages, past and future, including back pay, front pay, income loss and benefit loss in the amount of $200,000.00, or such greater amount as shall be proven at trial;

B. For general and compensatory losses and damage in the amount of $100,000.00, or such greater amount as shall be proven at trial;

C. For equitable relief, including ordering the Defendant to hire and reinstate Plaintiff and to take other affirmative actions as this Court deems appropriate based upon the proof at trial or at a proper hearing regarding such relief;

D. For an award of all costs and reasonable attorney fees incurred in the prosecution of this action and in all preliminary and administrative proceedings related thereto; and

E. For such other and further relief as this Court deems just and equitable in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial by a jury of twelve persons on all counts, claims and causes of action triable by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 22nd day of June, 2011.

                                             MAUK & BURGOYNE

                              By: _____/s/_____
                                  William L. Mauk, Of the Firm
                                  Attorneys for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**